# UNITED STATES DISTRICT COURT
## DISTRICT OF WYOMING

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>              Plaintiff,<br>v.<br><br>CASSANDRA L. CORBIN, a/k/a<br>Cassandra L. Ostby,<br><br>              Defendant. | **CRIMINAL COMPLAINT**<br><br>Case Number: 25mj37-R |

I, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief.

From on or about November 4, 2020, through and including on or about May 9, 2023, in the District of Wyoming and elsewhere, the Defendant, **CASSANDRA L. CORBIN, a/k/a Cassandra L. Ostby**, did knowingly steal, embezzle, and convert to her own use, on a recurring basis, money of a value in excess of $1,000 belonging to the United States, to wit: Survivor Insurance Benefits administered by the Social Security Administration in the amount of $86,170.00, to which she was not lawfully entitled.

In violation of 18 U.S.C. § 641.

The application is based on the following facts: *See attached Sworn Statement of Special Agent Mark Saari, Social Security Administration, Office of the Inspector General, incorporated by reference.*

                                                        _____
                                                        Signature of Complainant
                                                        MARK SAARI

Sworn and attested by the applicant before me by telephone, bearing a previous signature by reliable electronic means,

| | |
|---|---|
| 04-08-2025 at 1:38 p.m. at<br>Date | Cheyenne, Wyoming<br>City and State |
| HON. SCOTT P. KLOSTERMAN<br>United States Chief Magistrate Judge<br>Name & Title of Judicial Officer | *Scott P. Klosterman*<br>Signature of Judicial Officer |

## SWORN STATEMENT IN SUPPORT OF CRIMINAL COMPLAINT
## SPECIAL AGENT MARK SAARI
## U.S. v. CASSANDRA L. CORBIN

I, MARK SAARI, having been duly sworn, hereby state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.     I am a Special Agent with the Social Security Administration, Office of the Inspector General ("SSA-OIG"), and have been since March 31, 2019. I am currently assigned to the Seattle Field Division, Boise, Idaho Field Office, where I investigate threats against Social Security employees and facilities, employee malfeasance, and Social Security fraud such as direct deposit fraud, identity theft, Social Security Number misuse, and other types of fraud against Social Security programs. As part of my SSA-OIG related training, I attended the Inspector General (IG) Transitional Training Program (TTP) in Denver, Colorado June 25 – June 28, 2019, where I received legal review and guidance as well as specific case studies from criminal investigations throughout the United States. In addition, I have received on the job instruction from senior Special Agents from SSA-OIG on SSA Title II (Disability, Retirement, and Survivor benefits) and Title XVI (Supplemental Security Benefits) programs that SSA-OIG is tasked with investigating fraud, waste and abuse that may occur in those programs. I have approximately thirteen years of prior Federal law enforcement experience as a Deputy United States Marshal.

2.     The information contained in this Affidavit is based on my own personal knowledge and observations, as well as information conveyed to me by other law enforcement officers; my review of documents and records related to this investigation; and information gained through my training and experience. Because this Affidavit is submitted for the limited purpose of establishing probable cause, it does not set forth every fact that I, or others, have learned during the course of this investigation.

## PROBABLE CAUSE

3. On or about July 1, 2015, M.O. died. At the time of his death, M.O. was survived by two minor children. Due to the two children being under the age of eighteen, both children were eligible for Social Security Survivor Insurance Benefits ("survivor's benefits"). On or about July 6, 2015, Cassandra L. Corbin, a/k/a Cassandra L. Ostby ("CORBIN"), the surviving spouse of M.O., and mother of the two minor children, applied to the Social Security Administration to be the Representative Payee on behalf of the two minor children. CORBIN was provided a Social Security application summary, which notified her, as a Representative Payee, she was required to use all Social Security Administration payments for the two children's needs. Further, the letter notified CORBIN of her requirement to notify the Social Security Administration if the children left her custody, or if their living arrangement changed. CORBIN continued to receive monthly survivor's benefits (paid electronically) on behalf of her two minor children until on or about May 9, 2023.

4. At the time of her application, CORBIN resided in Deer Creek, Oklahoma. However, beginning on or about October 15, 2019, and continuing until at least November 4, 2020, CORBIN resided in Casper, Wyoming.

5. The investigation reveals that as of approximately November 4, 2020, CORBIN no longer had care and custody of her two minor children and she failed to report this fact to the SSA as required. As a result, CORBIN continued to receive survivor's benefits on behalf of the two minor children through May 9, 2023, totaling $86,170.00 that she was not entitled to receive.

6. Specifically, SSA received information, that on or about November 4, 2020, CORBIN's two minor children were removed from CORBIN's Wyoming home, by State of Wyoming Department of Family Services. After being removed from CORBIN's home, the two

minor children remained in state of Wyoming foster care, until an aunt ("The Aunt") obtained legal guardianship and applied to be the children's SSA Representative Payee in or about May 2023.

7. During the time period of November 4, 2020 to May 9, 2023, while CORBIN was the SSA Representative Payee for the minor children, CORBIN failed to notify the SSA that her minor children were no longer under her care and custody. The SSA paid approximately $86,170 to CORBIN, when the children were no longer under her personal care.

8. In April 2024, I spoke with The Aunt by telephone who informed me of the following, among other things:

   a. The two minor children went into foster care (in the state of Wyoming), in November of 2020, and have not been in the care of their mother, CORBIN, since that time.

   b. The two minor children were in Wyoming foster care from November 2020 until March of 2022.

   c. In March of 2022, the two minor children began living with The Aunt. In January 2023, The Aunt obtained guardianship over the two minor children.

   d. While the children were not in CORBIN's care from in or about November 2020 to in or about May 2023, CORBIN paid via Cash App, approximately $200, to her minor child. CORBIN also paid approximately $470 to The Aunt. The payments to the minor child and The Aunt occurred in the 2022-2023 time period. CORBIN did not send any further money to The Aunt to care for the children, and did not provide money for their shelter, while the children were out of CORBINS' care.

   e. CORBIN came to Billings, MT to visit her minor children for two weekend visits (October/November of 2022 and January/February 2023). During the two weekend visits, CORBIN took the kids to Dollar Tree to purchase toys for the children.

3

9. On June 21, 2024, Special Agents (SA) Bettencourt and Smiley with SSA-OIG conducted a voluntary interview with CORBIN at America's Best Value Inn, in Denver, CO. CORBIN stated the following:

   a. CORBIN explained that she was no longer the listed Representative Payee and that The Aunt was the current Representative Payee. CORBIN stated that The Aunt took over the role of Representative Payee at some point during 2023.

   b. SA Bettencourt asked CORBIN if she recalled being advised of SSA Representative Payee reporting requirements, and if CORBIN knew she was required to report to the SSA if her minor children had moved or no longer resided with her at her address. CORBIN stated, "Yeah, I mean, in my defense on that, this is the God's honest truth, I thought that, since the state did take my children, that the state would probably see that I had Social Security, and so I thought it would have automatically been taken." CORBIN added that the (SSA) payments obviously did not cease and she discussed the payment situation with The Aunt. CORBIN claimed that The Aunt told her not to be concerned with the payments as long as she (CORBIN) continued to assist with providing for the children in some capacity. CORBIN said she did exactly that in sending the children money each month.

   c. SA Bettencourt asked CORBIN if she ever made an overt effort to report to the state of Wyoming and/or SSA that she was continuing to receive the monthly SSA payments. CORBIN responded, "No, I didn't and obviously I know I should have done that, and, I listened to [The Aunt] by telling me it was ok."

   d. CORBIN confirmed that she knew that the SSA payments she received were to be used specifically for the care of her children. CORBIN advised she was helping the

kids, and noted that she was sending them money to help them buy items for school, etc. She said she did not think she was doing anything wrong because The Aunt advised her (CORBIN) that she just needed to assist with the children.

e.  CORBIN described the periods in which she sent money to whom and the methodology of the money transfers. When the state of Wyoming took custody of both the two minor children, CORBIN stated that her cousin's wife, was assigned to be the custodian or foster parent of the children. CORBIN was only allowed to see the children through established visits coordinated via a counselor's office. CORBIN explained that when she did see the children, she would bring them clothes and other items that she had purchased for them using funds provided by the SSA benefit payments. Additionally, she would bring the children food that she also purchased with SSA derived funds. However, CORBIN admitted that the majority of the money in which she was receiving for both the two minor children's care, when they were in the official custody of the state of Wyoming, was spent on her own personal living expenses, like rent, food, etc. CORBIN, at this time, did not send money to the children or anyone else through any electronic funds transfer service. SA Bettencourt asked CORBIN if she had receipts for the expenditures she made on behalf of the children and she stated that she did not have any receipts but she could probably estimate much of the calculations by reviewing her bank statements.

f.  When The Aunt ultimately took over as the children's Representative Payee in May 2023, CORBIN advised that she began sending the children money via the "Cash App." CORBIN detailed that she would send one of two minor children funds directly via the Cash App. CORBIN noted that one of the minor children is now

5

currently sixteen years of age. CORBIN added that one of the minor children would typically spend the money on things they needed for school and that she (CORBIN) would also send the minor child money for lunch almost daily. CORBIN further explained that she sent the money intended to be used for the minor child's care directly to The Aunt via the Cash App. CORBIN stated that she only sent money via the Cash App during the period in which The Aunt was the Representative Payee and did not use any other electronic transfer service. CORBIN stated she (CORBIN) likely still possessed all the Cash App transaction records.

g. CORBIN reported that the funds that were sent to both the minor child and The Aunt (on behalf of the minor child), amounted to approximately thirty to forty percent of what she had received via deposit from SSA, for each individual child. CORBIN noted that she spent the remainder of the funds on her own personal living expenses, which totaled approximately sixty or seventy percent of the total funds received.

h. SA Bettencourt asked CORBIN to expound on her living expenses. She proclaimed that her living expenses primarily consisted of rent, which she paid to her boyfriend, as well as assisting with bills for the residence and her own food. CORBIN stated that although she used drugs, she did not use the money that was intended for the children on drugs.

**END OF SWORN STATEMENT**

## PENALTY SUMMARY

| | |
|---|---|
| **DEFENDANT NAME:** | CASSANDRA L. CORBIN, a/k/a Cassandra L. Ostby |
| **DATE:** | April 8, 2025 |
| **INTERPRETER NEEDED:** | No |
| **VICTIM(S):** | Yes (U.S. government, Social Security Administration) |
| **OFFENSE/PENALTIES:** | **18 U.S.C. § 641**<br>(Theft of Government Money)<br><br>0-10 Years Imprisonment<br>Up To $250,000 Fine<br>3 Years Supervised Release<br>$100 Special Assessment |
| **AGENT:** | Mark Saari, SSA-OIG |
| **AUSA:** | Margaret M. Vierbuchen, Assistant United States Attorney |
| **ESTIMATED TIME OF TRIAL:** | 1 to 5 days |
| **WILL THE GOVERNMENT SEEK DETENTION IN THIS CASE:** | Yes |
| **ARE THERE DETAINERS FROM OTHER JURISDICTIONS:** | Yes. Defendant is wanted in Colorado. |